C. L. NEVILLE v. THE STATE OF TEXAS.

No. 6777.

1. **Lease of Public Lands—Statute of Frauds.**—Under the Act of 1883 a formal application in writing for a lease of public lands, properly describing the lands desired and specifying the price bid by the applicant, if favorably acted on by the State Land Board and a contract in accordance with the bid executed in duplicate by the secretary of the board, and forwarded by mail to the applicant for his signature, constituted a contract binding on the applicant though the written contract drawn by the

secretary was never signed by the applicant. The contract was complete when the bid was accepted and a written lease properly executed by the secretary of the board was tendered.

2. Same.—The fact that such written contract when prepared and tendered provided for suit being brought at the capital of the State on breach of the contract, and reserved to the State the right to sell the land, was immaterial. The law and regulations of the Land Board which authorized both became a part of the original offer to lease.

3. Same—Classification of Lands.—The fact that the classification of the lands. applied for had not been adopted by the Commissioner was immaterial; it was competent for the Land Board to adopt the classification already made.

APPEAL from Travis. Tried below before Hon. W. M. Key.
The opinion states the case

*West & McGown*, for appellant. — 1. The court below erred in finding as a matter of law that the State Land Board had any authority to, make in behalf of plaintiff the lease contract sued on.

. 2. Until the public lands had been surveyed and classified and a tabulated statement showing their classification had been filed in the Land Office and office of the surveyor of the county in which said lands were situated, the Land Board under the Act of April 12, 1883, acquired no control over said lands for any purpose whatever.

3. The State Land Board could acquire no authority to manage or control the public lands of Presidio County until by a strict compliance with the requisites of the law the land had been brought within its purview. Act April 12, 1883, sec. 3; State v. Day Land & Cattle Co., 68 Texas, 526; Martin v. McCarty, 10 S. W. Rep., 223; Taylor v. Burke, 66 Texas, 643; Snyder v. Nunn, 66 Texas, 255; Ramsey v. Medlin, 55. Texas, 248.

4. Neville, the appellant, having repudiated the lease contract when received, and never having gone into possession or in any manner derived benefits therefrom, is not liable as a lessee under the same.

5. Neville having notified the Land Board agents of his refusal to accept the lease is not bound as lessee.

*J. S. Hogg*, Attorney-General, and *James H. Robertson*, District Attorney, for the State. — 1. The State Land Board had full power and authority to lease the lands to the appellant, and the court below did not. err in so holding.

Act of April 12, 1883, the last part of section 3, in which it is provided: " Nothing herein shall be construed to require any further classification of such of said lands as have already been classified, unless the State Land Board shall believe that the same is necessary to ascertain the true value or class of such land." Acts of 1883, p. 85.

2. The defendant having leased said land without raising the ques-

tion of the land not having been classified, and having classified some himself, can not now be heard to urge the want of authority of the Land Board because they had not been classified.  Smissen v. The State of Texas, 71 Texas, 222.

3.  The court did not err in holding that the lease contract was binding on appellant.

GAINES, ASSOCIATE JUSTICE.—This was an action by the State to recover of appellant a sum of money alleged to be due it as rent upon certain school lands in Presidio County under a contract of lease made with appellant by the Land Board.  Appellant in his answer denied that he ever accepted the contract tendered him by the board.

The facts as shown by the evidence were that appellant made a written application for a lease of the lands for the term of six years, describing them by the sections and stating the price bid by him.  His application was acted upon by the board and his bid accepted.  The contract was drawn in duplicate by the authority of the board and was duly signed and acknowledged by its secretary and forwarded to appellant by mail for his signature and the return of one of the copies.  He received the papers but did not return them or either of them.  He testified that he did not accept the contract because when he received the duplicate instruments he saw that the State reserved the right to sell any part of the lands and also to bring suit for the money in Travis County in case he failed to pay.

We are of opinion that all that was required to complete the contract was that the Land Board should accept appellant's application and bid and tender him a duly executed lease in accordance with the terms of his offer.  If these things were done the minds of the parties met upon the terms of the agreement and the statute of frauds was complied with. The question is therefore presented whether the provision for the venue of the suits and the reservation of the right of sale changed the terms of appellant's offer.

We are of opinion that they did not.  Section 17 of the Act of 1883, which authorized the Land Board to lease the lands, provided that "all lands leased shall remain subject to purchase for actual settlement in bodies not to exceed six hundred and forty acres."  Laws 1883, p. 89. The lease contract contained the stipulation that it was "made subject to the right of the State, as provided in said act, to sell said land or any part thereof."  The defendant testified that "the rules and regulations of the Land Board required that all lease money on land should be paid at the State Treasury, in Austin, Travis County, Texas, and that the lease contracts should provide for payment in said city of Austin, at the State Treasury."

The law provided that the leases should be made "under such regula-

tions as the board may prescribe." The regulation that the money should be paid at the treasury was reasonable and in our opinion was valid. Justice to the State and to the lessees demanded that some place should be named for payment, and considering the interests of both parties no more appropriate and convenient place could have been designated. The application for lease recites that it was made under the provisions of the Act of 1883 and the resolutions of the Land Board, and it follows that the law and regulations of the board became a part of the offer. The terms of the written contract sent to appellant, which stipulate for the venue of the suits and reserve the right of sale, add nothing to it. They would have been implied if not expressed. The rent being payable in Travis County the courts of that county would have had jurisdiction without the stipulation to that effect. It follows that the Land Board did not alter the terms offered by appellant, and that their acceptance of his application and execution and delivery of the written lease completed the contract, and it was too late for appellant to recede from his offer.

It is further insisted that the State should not have recovered because it appeared from the testimony that the lands had never been classified. This defense is not specially pleaded in the answer. The State sued upon a contract prima facie valid, and if the defendant relied upon any fact to show its invalidity he should have alleged it in his answer, so that the plaintiff could have been prepared to meet the defense. But it seems to us the object of requiring that the lands should be classified was to enable the board the better to dispose of them by sale. In the section of the act which authorized the letting of the lands nothing is said of the classification. Since the leases are necessarily temporary in their operation, and the lands were subject to sale notwithstanding they may have been leased, the reason for a classification in case of leases does not apply as in cases of sale. In fact there had been a classification of these lands before the act was passed, which, however, had not been adopted by the Commissioner of the General Land Office. The act provided that if a classification had been made no other should be necessary. We think it was competent for the Land Board to have adopted and acted upon the classification already made, although the Commissioner may never have approved it.

There was no conflict in the evidence, and upon the undisputed facts we think the State was entitled to recover. The judgment is therefore affirmed.

*Affirmed.*

Delivered May 3, 1889.